UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA PRYOR,

        Plaintiff,

v.                            Case No. 8:26-cv-327-VMC-TGW

SGT. SARAH ROBINSON,
individually,
SHERIFF BOB GUALTIERI,
in his official capacity as
Sheriff of the Pinellas County
Sheriff's Office,

        Defendants.

_____/

## ORDER

This matter comes before the Court pursuant to Defendants Sergeant Sarah Robinson's and Sheriff Bob Gualtieri's Dispositive Motion to Dismiss Plaintiffs' Complaint With Prejudice (Doc. # 22), filed on April 13, 2026. Plaintiff Angela Pryor responded in opposition on May 15, 2026. (Doc. # 30). With the Court's leave, Defendants filed a reply on June 10, 2026. (Doc. # 33). For the reasons that follow, the Motion is granted in part and denied in part.

## I.   Background

This case arises from events surrounding the related action, State of Florida v. Angela Pryor, No. 22-01165-CF, in the Circuit Court for Pinellas County, Florida. See (Doc. #

1

6). Ms. Pryor's Complaint (Doc. # 1) provides the following factual allegations:

"On February 2, 2022, Deputies with the Pinellas County Sheriff's Department went to Baby Dolls in reference to a trespass investigation." (Id. at 4).[1] "When the Deputies arrived, numerous individuals were engaging in a physical affray." (Id. at 4). At some point, "Sgt. Robinson reported that she instructed Angela Pryor to leave the location and Ms. Pryor proceeded to strike her in the left cheek with her right hand and then disappeared within the crowd." (Id.).

According to the Complaint, "[b]ody camera evidence disputes this information and shows [Ms. Pryor] was nowhere near [Sgt. Robinson] at the time she was struck." (Id.). Nonetheless, Ms. Pryor "was subsequently tackled by multiple [deputies] and thrown on a table while being taken into custody." (Id.). Ms. Pryor contends that "[a]t no time did [she] resist arrest or attempt to flee" and that she "repeatedly advised the deputies that she did not strike Sgt. Robinson." (Id.).

---

[1] According to Defendants, "Baby Dolls Lounge and Sports Room" is "an adult entertainment nightclub." (Doc. # 22 at 3).

Later, Ms. Pryor "was treated . . . for a head and neck injury she sustained during the arrest as a result of the use of force by the deputies." (Id.). In addition, "[a]s a result of Sgt. Robinson's allegations, [Ms. Pryor] was charged with battery on a law enforcement officer, resisting an officer without violence, and simple battery." (Id.). "On February 23, 2022, Sgt. Robinson was interviewed at the State Attorney's Office," and during that interview, "she maintained [her allegation that] she was struck by [Ms. Pryor]." (Id. at 5). "On March 1, 2022, a Felony Information was filed for battery on a law enforcement officer." (Id.).

About one month later, "the State filed a No Information on the resisting an officer without violence charge and the simple battery charge." (Id.). Subsequently, Ms. Pryor's counsel sent a letter to the state prosecutor "requesting a Nolle Pross of the battery on a law enforcement charge. Specifically, [counsel] provided evidence showing [Ms. Pryor] did not batter Sgt. Robinson." (Id.).

In May 2022, the state prosecutor "discussed the matter with Sgt. Robinson. Sgt. Robinson contested the evidence presented by [Ms. Pryor's counsel] and maintained that it was in fact Angela Pryor that struck her." (Id.). Later, "in an email to the prosecutor, Sgt. Robinson again falsely

3

identified Angela Pryor as the individual who battered her." (Id.). "On October 12, 2022, Sgt. Robinson continued to double down on her false statements and provided sworn testimony to a jury, which resulted in the wrongful conviction of Angela Pryor. [Ms. Pryor] was sentenced to probation for 36 months." (Id. at 6).

"On October 13, 2022, [Ms. Pryor] went to the Sheriff's Office and filed an internal affairs [c]omplaint against the Deputies involved in her arrest and prosecution." (Id.). "On November 9, 2022, Sgt. Robinson gave a statement to Internal Affairs where she still maintained [Ms. Pryor] was the female who struck her." (Id.). "As a result of the Internal Affairs Complaint, the agency reviewed the body camera videos which clearly established that [Ms. Pryor] in fact did not strike Sgt. Robinson." (Id.). "On November 28, 2022, the State filed a Motion to Vacate Judgment and Sentence and [] as a result the charge was Nolle Prosequi." (Id.). At some point, "Sheriff Gualtieri admitted, 'the Deputies messed up.'" (Id.).

Ms. Pryor initiated the instant action in this Court on February 3, 2026, on the basis of federal question jurisdiction. (Id. at 1). In Count I, she asserts a claim against Sgt. Robinson, individually, for malicious prosecution under 42 U.S.C. § 1983. (Id. at 7). In Count II,

4

she asserts a claim against Sheriff Gualtieri, in his official capacity, for state law battery under Fla. Stat. § 768.28. (Id. at 8-9).

Defendants filed the instant Motion on April 13, 2026. (Doc. # 22). Ms. Pryor responded on May 15, 2026. (Doc. # 30). With the Court's leave, Defendants replied on June 10, 2026. (Doc. # 33). The Motion is ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

Defendants seek dismissal of both Count I and Count II. The Court addresses each separately.

### A. Malicious prosecution claim under Section 1983

"Section 1983 is an 'independent cause of action designed' to 'allow for private enforcement' of federal rights 'in courts.' So plaintiffs may use it to sue state officials who unreasonably seize them in violation of the Fourth Amendment." Gervin v. Florence, 139 F.4th 1236, 1246 (11th Cir. 2025) (citations omitted). The tort of "malicious prosecution" is sometimes called "a claim for unreasonable seizure pursuant to legal process" Id. at 1247. "In practice, though, a malicious-prosecution claim's common-law elements meld with the Fourth Amendment's textual components because a 'significant overlap' exists between them." Id. at 1248

6

(citation omitted). Accordingly, "to prove a Fourth Amendment malicious-prosecution claim in [the Eleventh] Circuit, a plaintiff must establish four elements: (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." Id.

In the Motion, Defendants argue that Ms. Pryor "failed to state a violation of her Fourth Amendment rights" and thus "failed to sufficiently allege all required elements for malicious prosecution." (Doc. # 22 at 5-7). According to Defendants, Count I must be dismissed because

> [Ms. Pryor] was the subject of a warrantless arrest by unnamed PCSO deputies. More specifically, per [Ms. Pryor's] own factual allegations, she was arrested on February 5, 2022, by these unnamed PCSO deputies for allegedly being the female who struck Defendant Robinson in the face and disappeared into the crowd in response to a lawful command to leave [Baby Dolls] while Defendant Robinson was attempting to stop a physical affray. [Ms. Pryor] was taken to jail that same evening and was released soon thereafter. Instead of being indicted, the State filed a Felony Information against [Ms. Pryor] for battery on a law enforcement officer on March 1, 2022, almost a month after her warrantless arrest and release from jail.

(Doc. # 22 at 5-6) (citing Doc. # 1).

The Court agrees. The Eleventh Circuit has held that "the illegal seizure cannot be just any seizure: unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure 'pursuant to legal process.'" Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016) (citation omitted). Specifically, "a warrantless arrest cannot serve as the predicate Fourth Amendment seizure for purposes of [a Section] 1983 malicious prosecution claim." Donley v. City of Morrow, 601 F. App'x 805, 814 (11th Cir. 2015) (per curiam). Accordingly, Ms. Pryor may not premise her malicious prosecution claim on her February 5, 2022 arrest, because that seizure was not made pursuant to legal process. See Sullenberger v. City of Coral Gables, No. 22-cv-21830, 2025 WL 101703, at *23-28 (S.D. Fla. Jan. 15, 2025) (granting motion to dismiss a Section 1983 malicious prosecution claim because the plaintiff did not allege "that he suffered a seizure that was pursuant to some legal process"); Douglas v. Judd, No. 8:24-cv-2569-VMC-AAS, 2025 WL 807466, at *3 (M.D. Fla. Mar. 13, 2025) (granting motion to dismiss where "the amended complaint only references a warrantless arrest and does not allege that Plaintiffs suffered a seizure pursuant to legal process").

In response, Ms. Pryor contends that Defendants' "argument is too narrow because the Complaint does not rest solely on the initial arrest." (Doc. # 30 at 5). She argues that "a prosecutor's filing of a Direct Information constitutes a legal process for purposes of malicious prosecution." (Id. at 4) (citing Whiting v. Traylor, 85 F.3d 581, 585 n.5 (11th Cir. 1996)). According to Ms. Pryor, "a felony information was filed against [her], she was prosecuted and convicted by a jury, and was sentenced to 36 months of probation . . . These facts plainly establish a seizure pursuant to legal process." (Id.) (citing Doc. # 1). Ms. Pryor invokes Justice Ginsburg's concurring opinion that "[a] defendant incarcerated until trial no doubt suffers greater burdens. That [], however, should not lead to the conclusion that a defendant released pretrial is not still 'seized' in the constitutionally relevant sense. Such a defendant is scarcely at liberty . . . ." (Id. at 5) (quoting Albright v. Oliver, 510 U.S. 266, 279 (1994) (Ginsburg, J., concurring)). Thus, Ms. Pryor argues that "[w]hile [she] was not taken into custody after the Information was filed, she was undoubtedly seized through means of pretrial restraint and ultimately probation conditions." (Id. at 6).

9

The Court is not persuaded. The Eleventh Circuit has specifically expressed its "doubts about the viability of [Justice Ginsburg's 'continuing seizure'] theory." Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir. 2004) (citing Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996)). Indeed, "[a] number of [] circuits have addressed the theory, and none have been willing to conclude that normal conditions of pretrial release constitute a 'continuing seizure' barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate." Id. Here, Ms. Pryor's Complaint provides no factual allegations as to her "pretrial restraint" or its conditions, and thus her Complaint fails to allege a seizure pursuant to legal process on that basis.

Nor is the Court convinced that Ms. Pryor's "probation conditions" could constitute a "seizure pursuant to legal process." Ms. Pryor has not identified a single case holding that a judgment of probation could constitute a Fourth Amendment seizure. To the contrary, the Eleventh Circuit has indicated "probation revocations [] fall in that category." Clark v. Bell, No. 25-13645, 2026 WL 1162921, at *3 (11th Cir. Apr. 29, 2026) (citations omitted). Moreover, "[t]he 'seizure' of a 'person' plainly refers to an arrest." Torres

10

v. Madrid, 592 U.S. 306, 312 (2021) (citation omitted). Indeed, the Supreme Court generally "interpret[s] the term 'seizure' by consulting the common law of arrest, the quintessential seizure of the person under [] Fourth Amendment jurisprudence." Id. at 311.

And as reflected in the cases cited by Ms. Pryor, a "seizure pursuant to legal process" generally refers to a situation where the defendant is detained or taken into custody after the legal process is initiated. See Williams v. Aguirre, 965 F.3d 1147, 1157-59 (11th Cir. 2020) (defendant subjected to pretrial detention); Manuel v. City of Joliet, 580 U.S. 357, 364-70 (2017) (same); Williams v. Miami-Dade Police Dept., 297 Fed. App'x 941, 949 (11th Cir. 2008) (defendant released on bond and later his bond was revoked); Whiting, 85 F.3d at 585 n.5 (defendant arrested pursuant to warrant); Black, 811 F.3d at 1266-69) (same); Kelly v. Curtis, 21 F.3d 1544, 1554-55 (11th Cir. 1994) (same). The Court is not persuaded by the decision in Blackshear v. City of Miami Beach, 799 F. Supp. 2d 1338 (S.D. Fla. 2011), where the reason provided for not dismissing the malicious prosecution claim was merely that "supplying false information in arrest affidavits violates the Fourth Amendment and can provide the basis for a § 1983 claim." Id. at 1349 (citing Jones v.

Cannon, 174 F.3d 1271 (11th Cir. 1999) (a false arrest case, not a malicious prosecution case)). Again, "unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure 'pursuant to legal process.'" Black, 811 F.3d at 1267.

Here, because Ms. Pryor "was not taken into custody after the Information was filed" (Doc. # 30 at 6), she was not seized pursuant to that process. Thus, because her Complaint does not allege a seizure pursuant to legal process, the Complaint fails to state a claim for malicious prosecution under Section 1983.

The Motion is granted in part. Count I is dismissed without prejudice for failure to state a claim. Accordingly, the Court need not and does not decide whether Sgt. Robinson is entitled to qualified or absolute immunity as to Count I. If she wishes to amend Count I, Ms. Pryor must file an amended complaint within fourteen days of the date of this Order.

### B.   Battery claim under Florida law

Next, Defendants argue that Count II fails to state a claim. (Doc. # 22 at 17). They argue "the Fourth Amendment does not protect against the use of reasonably necessary force by law enforcement" and that Ms. Pryor's "allegations consist of considerably less force than the Eleventh Circuit has held

to be de minimis in other cases." (Id. at 20-21) (citations omitted). Defendants also contend that "probable cause existed for [Ms. Pryor's] arrest" (Doc. # 33 at 8; Doc. # 22 at 19-20), and "'[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested.'" (Doc. # 22 at 20) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

As an initial matter, the Court addresses the standards for evaluating Count II. Unlike Count I, Count II is not brought under Section 1983. Instead, Count II asserts a state law battery claim "against [Sheriff Gualtieri] in his employer [i.e., official] capacity, pursuant to § 768.28, Fla. Stat." (Doc. # 1 at 8). In that statute, the Florida Legislature enacted a limited "[w]aiver of sovereign immunity in tort actions." Fla. Stat. § 768.28. Relevant here, the Florida statute provides that:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property . . .
>
> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an

13

officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

Thus, in order to assert her claim against Sheriff Gualtieri in his official capacity, Ms. Pryor must sufficiently allege facts establishing (1) the elements of common law battery under Florida law, and (2) that the acts of Sheriff Gualtieri's deputy officers were not "committed while acting outside the course and scope of [their] employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Id.; see also Gregory v. Miami-Dade Cnty., Florida, 719 Fed. App'x 859, 873 (11th Cir. 2017) ("The question here is thus whether the facts alleged in the complaint plausibly state a claim that Officer Perez

14

committed an intentional and wholly unjustified battery against Gregory but did not do so 'in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of the plaintiff's rights.' In other words, plaintiffs may use alternative pleading to bring suit against both a government entity and an individual employee, but, if the factual allegations can occur only from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails under § 768.28.").

Here, Defendants do not argue for dismissal of Count II on the ground that Ms. Pryor's injuries resulted from "bad faith or malicious or wanton and willful conduct." Id.; see (Doc. # 22 at 17-21). Rather, Defendants argue that Count II fails to state a claim because the deputies purportedly used "reasonably necessary force." (Id.). Accordingly, the Court now turns to the elements of battery under Florida law.

"In Florida, battery has two elements: (1) intent to cause a harmful or offensive contact, and (2) a resulting offensive contact with the person of the other. In the arrest context, a battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances. If excessive force is used in an arrest, the ordinarily protected use of force by a police

15

officer is transformed into a battery. But ordinary incidents of an arrest . . . do not give rise to an independent tort." Baxter v. Roberts, 54 F.4th 1241, 1272-73 (11th Cir. 2022) (cleaned up) (citing City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); Lester v. City of Tavares, 603 So. 2d 18, 19-20 (Fla. 5th DCA 1992)); see also Percival v. Chronister, 796 F. Supp. 3d 1020, 1045 (M.D. Fla. 2025) (noting "although 'ordinary incidents of the arrest . . . do not give rise' to a battery claim . . . a 'police officer may be liable for the use of excessive force (i.e., battery) while effectuating a lawful arrest'" (citations omitted)). Thus, "[b]attery claims for excessive force under Florida law are 'analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.' [The Eleventh Circuit] has applied the same Fourth Amendment excessive force analysis to a battery claim against an officer under Florida law." Baxter v. Santiago-Miranda, 121 F.4th 873, 891-92 (11th Cir. 2024) (citations omitted).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. Even when an officer has probable cause to arrest or detain an individual, the individual may still pursue [an] excessive

16

force claim if the force used to effectuate that arrest or detention was objectively unreasonable. [In this analysis, the court] looks to the 'totality of circumstances.'" Castro-Reyes v. City of Opa-Locka, 166 F.4th 886, 899-900 (11th Cir. 2026) (cleaned up and citation omitted). Accordingly, the Motion fails to the extent that Defendants seek dismissal of Count II solely based on their argument that probable cause existed to arrest Ms. Pryor. Rather, Defendants must show that the Complaint fails to allege that the force used by the deputies was objectively unreasonable.

When evaluating excessive force, "[t]he quantum of force employed against an individual is weighed against (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted." Id. at 900. "In making this determination, [the court] must be careful not to Monday-morning quarterback but instead to judge the 'reasonableness' of a particular use of force from the perspective of a reasonable officer on the scene." Patel v. City of Madison, 959 F.3d 1330, 1339 (11th Cir. 2020).

17

"But in a case where an officer uses 'gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands,' . . . '[the Eleventh Circuit has] repeatedly ruled that the officer violates the Fourth Amendment and is denied qualified immunity." Id. (cleaned up and citations omitted).

Here, the Complaint alleges that, even though Ms. Pryor "was nowhere near [Sgt. Robinson] at the time she was struck," Ms. Pryor was nonetheless "tackled by multiple Pinellas County Sheriff's Deputies and thrown on a table while being taken into custody. At no time did Angela Pryor resist arrest or attempt to flee. Angela Pryor repeatedly advised the deputies that she did not strike Sgt. Robinson." (Doc. # 1 at 4). "Upon release from jail, Angela Pryor was treated at Bayfront Health for a head and neck injury she sustained during the arrest as a result of the use of force by the deputies." (Id. at 4-5). According to the Complaint, "Sheriff Gualtieri admitted, 'the Deputies messed up.'" (Id. at 6).

Viewed in the light most favorable to Ms. Pryor, the Complaint alleges that Sheriff Gualtieri's deputies used significant force (e.g., tackling, throwing on a table, causing head and neck injuries) during Ms. Pryor's arrest while she was not an immediate threat or otherwise resisting

18

or attempting to flee. See, e.g., Patel, 959 F.3d at 1339-40 ("Because a jury could reasonably find that Patel was not resisting, it could reasonably conclude that Parker had no reason to use the force he did on Patel that resulted in severe and permanent physical injuries." (cleaned up and citation omitted)); Stephens v. DeGiovanni, 852 F.3d 1298, 1326 (11th Cir. 2017) (excessive force where "forceful chest blows" and "throwing [Stephens] against the car-door jamb" were "unnecessary for a compliant, nonaggressive arrestee"); Percival, 796 F. Supp. 3d at 1041-42 ("jury could find . . . excessive force" where the deputies "[swept] Percival's leg out from under her, slamm[ed] her to the ground, and appl[ied] force on her back and neck" and "the use of force was untethered to 'any law enforcement need to restrain or arrest [her]'" (citations omitted)).

Contrary to Defendants' argument, the Court finds that the Complaint's allegations of the deputies' use of force exceed those found by the Eleventh Circuit to be de minimis. See, e.g., Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (de minimis force where officer "merely grabbed Appellee and shoved him a few feet against a vehicle, [and] pushed [a] knee into Appellee's back and Appellee's head against the van"); Daniels v. Blakley, No. 24-12514, 2025 WL

19

1517068, at *3 (11th Cir. May 28, 2025) (de minimis force where officers "applied pressure across Daniels's upper legs while [cuffing] him" and where "Daniels [] never identified any specific injury"); Jones v. City of Dothan, 121 F.3d 1456, 1461 (11th Cir. 1997) (de minimis force where officers "'slammed' Mr. Jones against the wall, kicked his legs apart, [and] required him to raise his arms"; Durruthy v. Pastor, 351 F.3d 1080, 1085 (11th Cir. 2003) (de minimis force where officers "pulled Durruthy onto the ground," "kneed Durruthy in the back," and "held Durruthy down with her hands"). The use of force alleged in the Complaint is not de minimis.

The Motion is denied in part as to Count II.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants Sergeant Sarah Robinson's and Sheriff Bob Gualtieri's Dispositive Motion to Dismiss Plaintiffs' Complaint With Prejudice (Doc. # 22) is **GRANTED** in part and **DENIED** in part. The Complaint is **DISMISSED** without prejudice to the extent stated herein.

(2)  If she wishes to amend the dismissed claims, Plaintiff Angela Pryor must file an amended complaint within fourteen days of the date of this Order.

21

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of July, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

21